# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                                      No. 16-192

KEITH FOSTER                                              SECTION I

## ORDER & REASONS

Before the Court is petitioner Keith Foster's ("Foster") motion[1] to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the motion is denied.

## I.

On November 3, 2016, Foster was charged in counts one through five of a six-count indictment.[2] On May 23, 2017, Foster pled guilty to conspiracy to distribute and possess with the intent to distribute a quantity of heroin, conspiracy to possess a firearm in furtherance of a drug trafficking crime, and possession of a firearm in furtherance of a drug trafficking crime.[3] On August 24, 2017, Foster was sentenced to a term of imprisonment of 295 months.[4] Foster timely appealed his sentence and conviction.[5] His appeal was later dismissed by his own motion on November 22,

---

[1] R. Doc. No. 154.
[2] R. Doc. No. 1.
[3] *Id.* Foster pled to counts 1, 4, and 5 of the indictment, respectively.
[4] R. Doc. No. 127.
[5] R. Doc. No. 131. *See also* Fed. R. App. P. 4(b)(1)(A).

2017.[6]  Foster timely filed the present motion on August 22, 2018, which the government does not dispute.[7]

## II.

Section 2255 allows a prisoner in federal custody to bring a motion to vacate, set aside, or correct his sentence, in the court that imposed the sentence, when that prisoner claims a

> right to be released upon a ground that the sentence was imposed in violation of the constitution or laws of the United States, or that the court was without the jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a).  When a defendant challenges his conviction and sentence collaterally under § 2255, the defendant can only bring "issues of constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) ("Section 2255 motions may raise only constitutional errors and other injuries that could not have been addressed on direct appeal that will result in a miscarriage of justice if left unaddressed.").

Foster asserts seven grounds for relief: (1) inaccurate information in the presentence investigation report ("PSR"), specifically alleging there were two different PSRs before sentencing; (2) ineffective assistance of counsel for failure "to

---

[6] R. Doc. No. 151.
[7] R. Doc. Nos. 154, 158.

provide defendant with proper and accurate assistance/mislead"; (3) an illegal sentence that was beyond the guideline range; (4) counsel's failure to investigate and determine why Foster was federally charged; (5) "outrageous conduct by the Judge" at sentencing; (6) the government "never made [Foster] an offer"; and (7) the government pressured Foster to plead guilty.[8]

All of Foster's claims, except his ineffective assistance of counsel claims, were waived in his plea agreement, and they are procedurally barred because he did not bring them on direct appeal. Likewise, Foster's ineffective assistance of counsel claims are meritless.

## III.

Foster's claims set forth in his first, third, fifth, sixth and seventh grounds for relief were waived in his plea agreement. "A defendant may waive his right to 28 U.S.C. § 2255 post-conviction relief if the waiver was knowing and voluntary." *United States v. Michele*, No. 13-160, 2016 WL 1660179, at *7 (E.D. La. Apr. 27, 2016) (Africk, J.) (citing *United States v. White*, 307 F.3d 336, 343–44 (5th Cir. 2002)). "A waiver is knowing and voluntary where the defendant indicates at the plea hearing that he has read and understands the plea agreement containing the waiver." *United States v. Singleton*, No. 14-168, 2017 WL 3894687, at *1 (E.D. La. Sept. 6, 2017) (Africk, J.) (quoting *United States v. Donahue*, 333 F. App'x 897, 898 (5th Cir. 2009)). "For such a waiver to be knowing and voluntary, a defendant must understand that he has the right to collateral review and that he is giving up that right." *Michele*, 2017 WL

---

[8] R. Doc. No. 154.

1660179, at *7 (citing *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011)).

"[W]hen the record . . . clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed." *Singleton*, 2017 WL 3894687, at *1 (quoting *United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994)).

Foster pled guilty, and entered into a plea agreement with the government.[9] Foster's plea agreement, which he and his counsel signed and authenticated, includes a waiver of any collateral challenges, including challenges under § 2255:

> the defendant, in exchange for promise(s) and agreement(s) made by the United States in this plea agreement, knowingly and voluntarily . . . waives and gives up any right to challenge his sentence collaterally, including but not limited to any and all rights which arise under Title 28, United States Code, Sections 2255 and 2241, Rule 60 of the Federal Rules of Civil Procedure, Rule 36 of the Federal Rules of Criminal Procedure, writs of *coram nobis* and *audita querla*, and any other collateral challenges to his sentence of any kind.[10]

At Foster's rearraignment, the Court, after finding that Foster was competent to enter into the proceedings,[11] questioned Foster as to his understanding of the plea agreement and the consequences of the waiver:

> **THE COURT**: Mr. Foster, have you had an opportunity to read and review and discuss this four-page plea agreement with your attorney of record, Mr. Arena?
>
> **THE DEFENDANT**: Yes, sir.

---

[9] R. Doc. No. 80.
[10] *Id.* at 3; *see also* R. Doc. No. 144, at 24–26.
[11] R. Doc. No. 144, at 4.

4

**THE COURT**: And are your initials on all four pages of the plea agreement?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: And is this your signature on the fourth and final page of the plea agreement?

**THE DEFENDANT**: Yes, sir.

. . .

**THE COURT**: Now, as part of your plea agreement, you waived your rights, in most respects, to appeal your conviction and/or your sentence. Do you understand that, in addition to giving up your right to a direct appeal, you've further waived your right to contest your conviction and/or your sentence in any collateral proceeding pursuant to 28 U.S. Code, Sections 2255 and 2241, which allow defendants to challenge whether their sentence and/or conviction was constitutional and/or contrary to the laws of the United States? Do you understand that?

**THE DEFENDANT**: Yes, sir.

. . .

**THE COURT**: Do you understand you are waiving and giving up your right to collaterally challenge your sentence, including but not limited to any civil rights which arise under the U.S. Code, Federal Rules of Civil Procedure, Federal Rules of Evidence, and any other collateral challenges to your sentence of any kind?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Have you had a chance to discuss your waiver with counsel?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Did your counsel explain the waiver to you, including the rights you are and are not giving up?

> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Are you satisfied with the advice your attorney gave you regarding the waiver?
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Do you have any questions about the waiver?
>
> **THE DEFENDANT**: No, sir.[12]

Foster does not specifically allege that his waiver was involuntary or unknowing. He does, however, allude to such a claim in ground seven of his motion by stating that he was pressured into pleading guilty because the prosecutor gave him "one week to plead guilty or go to trial."[13]

The Court specifically questioned Foster at rearraignment about whether he was voluntarily and knowingly entering into the plea agreement and waiving his right to appeal:

> **THE COURT**: Have you been influenced or persuaded in any way to plead guilty because of any promise of leniency or other things made by anyone?
>
> **THE DEFENDANT**: No, sir.
>
> **THE COURT**: Have you been induced or persuaded to plead guilty because of any threats made by anyone?
>
> **THE DEFENDANT**: No, sir.
>
> . . .
>
> **THE COURT**: Are you entering into the waiver voluntarily and of your own free will?

---

[12] R. Doc. No. 144, at 26, 28, 31.
[13] R. Doc. No. 154, at 10.

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Are you satisfied you understand the waiver?

**THE DEFENDANT**: Yes, sir.[14]

"Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (quoting *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979). "If, however, the defendant offers specific factual allegations supported by the affidavit of a reliable third person, then he is entitled to have a hearing on his allegations." *Fuller*, 769 F.2d at 1099 (citing *Blackledge v. Allison*, 431 U.S. 63 (1977)).

Foster indicated that he read and understood the plea agreement, and he assured the Court that he was aware of the consequences of his plea agreement. Further, Foster has not provided the Court with any support for his allegations that pressure by the government rendered his waiver unknowing or involuntary. Therefore, his first, third, fifth, sixth, and seventh claims are rejected.[15]

---

[14] R. Doc. No. 144, at 20–21, 32.

[15] Foster argues in ground three of his motion that his sentence was illegal because the Court sentenced him beyond the guideline range. R. Doc. No. 154, at 7. At sentencing, the Court sentenced Foster to a variant sentence above the guidelines pursuant to 18 U.S.C. § 3553. R. Doc. No. 145, at 20–21. This claim was waived with the other claims as discussed above. The Court also notes, however, that Foster specifically waived this claim—the application of the sentencing guidelines—in his plea agreement.

In Foster's plea agreement, which he and his counsel signed, Foster acknowledged that he

> understands that any discussions with [his] attorney or anyone else regarding sentencing guidelines are merely rough estimates and the Court is not bound by those discussions. [He] understands that the

# IV.

Foster's claims in his first, fifth, and sixth grounds for relief also fail because they are insufficient to allege constitutional errors in his proceedings.

Pro se § 2255 motions are construed liberally, but "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (citing *United States v. Woods*, 870 F.2d 285, 287–88 (5th Cir. 1989)); *see also Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

---

sentencing guidelines are advisory and are not mandatory for sentencing purposes. [He] understands the Court could impose the maximum term of imprisonment and fine allowed by law, including the imposition of supervised release. [He] is also aware that in determining a fair and just sentence, the Court has the authority and discretion, pursuant to Title 18, United States Code, Section 3353 and 3361 and Section 1B1.3 of the United States Sentencing Guidelines, to consider any and all "relevant conduct" that the defendant was involved in, the nature and circumstances of the offenses, and the history and characteristics of the defendant. R. Doc. No. 80, at 3.

At Foster's rearraignment, the Court specifically questioned Foster about his understanding of his plea agreement and the Court's application of the sentencing guidelines. Foster acknowledged that he understood that the Court had an obligation to consider the sentencing guideline range, but that the Court was not bound by the guidelines; that the Court could depart from the guideline range under certain circumstances; that he was waiving his right to appeal a final sentence that was greater than the guideline range, including a sentence that includes a greater fine, term of imprisonment, probation, or supervised release than the maximum established in the guideline range; that he was waiving his right to challenge any U.S. Sentencing Guidelines determination and their application by any judge; and that discussions with his attorney or anyone else about the sentencing guidelines were rough estimates and that the Court was not bound by these discussions. *See* R. Doc. No. 144, at 17–18, 30–31, 35.

Foster's first ground for relief is not a claim of constitutional error. Furthermore, although Foster asserts that there was inaccurate information in the PSR and that there were two PSRs before sentencing,[16] such claim is not supported by the record, which reflects that only one final PSR was submitted to the Court.[17] However, included in the final PSR are Foster's two objections; one was cured before sentencing and the other was overruled by the Court at sentencing.[18]

Moreover, the Court and Foster's counsel cured Foster's claim that there was inaccurate information in the PSR at Foster's sentencing. Foster's counsel objected to the inclusion of information in the final PSR that was allegedly added after Foster submitted his objections to the draft PSR.[19] Foster argued that some of the additional information did not apply to Foster, and the Court stated that it would not consider that information when sentencing Foster.[20]

Foster's conclusory fifth ground for relief, that the conduct of the Court during his proceedings was "outrageous," sarcastic and petty,[21] is not a challenge to the constitutionality of Foster's proceedings and, without specific allegations alleging

---

[16] R. Doc. No. 154, at 4.
[17] R. Doc. No. 113. Foster is likely referring to the draft PSR that the probation officer provided only to the parties, and which the Court cannot access. *See* R. Doc. No. 88.
[18] R. Doc. No. 145, at 10.
[19] The addendum to the PSR explains that paragraphs 104 and 105 were added after Foster provided clarifying information to the probation officer about his drug history. R. Doc. No. 113, at 26.
[20] Foster's counsel explained to the Court at sentencing that paragraph 105 included information that applied to Foster's co-defendant, rather than Foster. The Court stated that it would not consider paragraph 105 in the sentencing. R. Doc. No. 145, at 3–6. R. Doc. No. 145, at 6.
[21] R. Doc. No. 154, at 10.

constitutional error, is not considered on habeas review. *See Williamson*, 183 F.3d at 462.

Likewise, Foster's claim in ground six—that he "was never made an offer"—is conclusory and confusing. Even construing Foster's allegation liberally, his claim does not rise to a constitutional challenge. First and foremost, "a defendant has no right to be offered a plea." *Missouri v. Frye*, 566 U.S. 134, 148 (2012) (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977)). Second, Foster received a plea deal, which he agreed to, and the government agreed to dismiss the remaining charges in the indictment.[22]

The Court notes that it questioned Foster, his attorney and the government at Foster's rearraignment about any *additional* plea offers, and gave Foster an opportunity to ask the government or his attorney any questions:

> **THE COURT**: All right. Has the government made any other plea offers other than what is set forth in the plea agreement?
>
> **THE DEFENDANT**: No.
>
> **THE COURT**: By the government?
>
> **[Assistant U.S. Attorney] JONES**: No, Your Honor.
>
> **THE COURT**: Counsel, have there been any other plea offers to your client?
>
> **MR. ARENA**: No, Your Honor, no other plea agreements.
>
> **THE COURT**: Not only plea agreements, but have there been any other plea offers?

---

[22] R. Doc. No. 80.

**MR. ARENA**: No other plea offers, Your Honor.

**THE COURT**: Sir, to the best of your knowledge, is what your attorney just said correct?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Mr. Foster, do you have any questions for your attorney or the government about any plea offers not set forth in the plea agreement?

**THE DEFENDANT**: No, sir.

**THE COURT**: Are there any other or different promises or assurances that were made to you that are not written down in the plea agreement?

**THE DEFENDANT**: No, sir.

**THE COURT**: Are there any secret agreements that you have been informed of, whether with the government, the Court, or anyone else, that have been made in an effort to persuade you to plead guilty?

**THE DEFENDANT**: No, sir.[23]

Foster's claim in ground six of his motion, that he did not receive an offer, is meritless, and it does not rise to a constitutional challenge to his sentence or conviction.

## V.

Foster's claims in his first, third, fifth, sixth, and seventh grounds for relief are also procedurally barred because Foster did not raise them on direct appeal. Foster has not met either prong of the cause and prejudice test necessary to overcome the procedural default.

---

[23] R. Doc. No. 144, at 35–36.

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and a narrow range of injuries that could not have been raised on appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curium)). "[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal." *Bousley*, 523 U.S. at 621 (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)).

A defendant "may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *Shaid*, 937 F.2d at 231–32 (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)). The cause and prejudice test is a dual standard, and a petitioner must prove both to "surmount[] the procedural bar." *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996); *see also Frady*, 456 U.S. at 168 (finding it "unnecessary" to determine whether the defendant had shown cause for his procedural default because he could not show actual prejudice).

"The 'cause' standard requires [the defendant] to show 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *Guerra*, 94 F.3d at 993 (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992)). "Objective factors that constitute cause include interference by officials that make compliance with the procedural rule impracticable, a showing that

the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id.*; *see also Murray v. Carrier*, 477 U.S. 478, 485–88 (1986) (holding that a claim for ineffective assistance of counsel can serve as cause for procedural default if the claim meets the constitutional standard established in *Strickland v. Washington*). "Constitutionally ineffective assistance of counsel, in the form of failure to raise issues on appeal, can operate as cause for procedural default." *United States v. Hampton*, 99 F.3d 1135 (5th Cir. 1996) (per curiam) (citing *Murray*, 477 U.S. at 488–92)).

"To show actual prejudice, the defendant must demonstrate 'not just the "possibility of prejudice," . . . but an "actual and substantial disadvantage, infecting his entire [proceedings] with error of constitutional dimensions.""" *United States v. Rodrigue*, No. 11-118, 2017 WL 3840655, at *2 (E.D. La. Aug. 31, 2017) (Africk, J.) (quoting *Shaid*, 937 F.2d at 233). "In the context of a guilty plea, [the defendant] must show that absent the error . . . he would not have pleaded guilty and would have insisted on going to trial." *Guerra*, 94 F.3d at 994.

Foster filed a notice of appeal on August 28, 2018, which he voluntarily dismissed.[24]  The claims that Foster could have argued on appeal are therefore procedurally defaulted unless he shows both cause for his failure to urge them on appeal and actual prejudice.

Foster fails the "cause" prong of the test because he does not provide in his motion any reasons as to why he did not assert his claims on direct appeal.  Foster

---

[24] R. Doc. No. 151.

asserts two claims of ineffective assistance of counsel, but those claims do not present an objective factor that prevented Foster from supporting his claims on direct appeal.

In Foster's first ineffective assistance of counsel claim, he states generally, without any specifics, that his "counsel failed to provide defendant with the proper and accurate assistance" and misled him.[25]  Foster asserts in his second ineffective assistance of counsel claim that his counsel failed to investigate his charges.[26]  The Court addresses the merits of these claims below, but neither is sufficient to establish cause for Foster's procedural default.

Foster does not distinguish between the performance of trial counsel and appellate counsel, or whether either counsel's alleged deficient performance was provided at the trial or appellate stage of the proceedings.[27]  Foster's conclusory

---

[25] R. Doc. No. 154, at 5.

[26] *Id.* at 9.

[27] After Foster was convicted and sentenced, Foster's trial counsel filed Foster's notice of appeal, but subsequently withdrew as Foster's attorney. R. Doc. Nos. 131, 133. This Court ordered that a federal public defender be appointed for Foster's appeal. R. Doc. No. 133; *see also* R. Doc. No. 154, at 13.  Foster's appellate counsel filed Foster's motion for voluntary dismissal on his behalf. USCA No. 17-30701, R. Doc. No. 30. That motion includes a request for dismissal signed and dated by Foster, which reads:

> I, Keith Foster, have conferred with my appellate attorney, Deborah Pearce, regarding the possible issues in my case and the consequences of appealing. I understand that I have the right to appeal the judgment and sentence in this case and to have the assistance of appointed counsel on appeal. In light of that discussion, I hereby make the following decision regarding my appeal, and authorize my attorney to file this document in the public records of the court:

Foster then checked off the line which reads: "I do not want to go forward with my appeal, and I instruct my attorney to file on my behalf a motion to dismiss the appeal." *Id.*

allegations about the performance of either counsel, without specifics, do not rise to an ineffective assistance of counsel claim in the constitutional sense which prevented Foster from arguing issues on appeal.

As the cause and prejudice test is a dual standard, and since Foster has not established cause for his default, the Court need not address whether actual prejudice exists. Even so, Foster has not argued that absent his counsel's alleged deficient performance, he would not have pled guilty, but instead would have insisted on going to trial. Since Foster "has not identified any constitutional error with respect to his plea or sentencing" that infected his proceeding, he has not demonstrated actual prejudice. *Rodrigue*, 2017 WL 3840655, at *2.

As an exception to the cause and prejudice test, a defendant may attempt to argue and support a claim that he is "actually innocent," but this is a "narrow exception" for an "extraordinary case." *Shaid*, 937 F.2d at 232 (citing *Murray*, 477 U.S. at 496). Foster has not made any argument that he is actually innocent so the exception does not apply.

Accordingly, Foster is barred from urging his first, third, fifth, sixth, and seventh claims before this Court.

## VI.

Finally, Foster urges two claims of ineffective assistance of counsel in his second and fourth grounds for relief. "The Supreme Court has held that 'failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought' in a § 2255 proceeding." *United States v. Addison*, No. 14-

168, 2017 WL 2972911, at *1 (E.D. La. July 11, 2017) (Africk, J.) (citing *Massaro v. United States*, 538 U.S. 500, 509 (2003)). Ineffective assistance of counsel claims are governed by the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).

*Strickland*'s two-part test requires a petitioner to prove both deficient performance and resulting prejudice. *Id.* at 687. The petitioner must satisfy both prongs of the *Strickland* test in order to be successful on an ineffective assistance claim. *See id.* A court is not required to address these prongs in any particular order. *Id.* at 697. If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689). In other words, "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

A showing of prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea

process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, in challenging a guilty plea on grounds of ineffective assistance, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *King v. Davis*, 898 F.3d 600, 605 (5th Cir. 2018) (quoting *Hill*, 474 U.S. at 59). The defendant must also show "that going to trial would have given him a reasonable chance of obtaining a more favorable result." *King*, 898 F.3d at 605 (citing *United States v. Shepherd*, 880 F.3d 734, 743 (5th Cir. 2018)).

## A.

In his first ineffective assistance of counsel claim, and his second ground for relief, Foster asserts that his "counsel failed to provide defendant with proper and accurate assistance" and misled him.[28] This is the extent of the information that Foster has provided. He does not point to any specific acts or missteps by his counsel that could constitute deficient performance or that would allow the Court to examine the record to determine whether Foster's counsel acted unreasonably. Further, Foster does not assert that, but for his counsel's inaccurate or misleading information, Foster would not have pled guilty, would have insisted on going to trial, and that a trial would have provided a reasonable chance of obtaining a more favorable result.

The Court specifically asked Foster at rearraignment about his counsel's performance in relation to his plea:

---

[28] R. Doc. No. 154, at 5.

> **THE COURT**: Have you had sufficient time to discuss with your attorney the facts of your case and any possible defenses you may have?
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Are you entirely satisfied with the advice and services of your counsel?
>
> **THE DEFENDANT**: Yes, sir.
>
> . . .
>
> **THE COURT**: Are you satisfied with the advice your attorney gave you regarding the waiver?
>
> **THE DEFENDANT**: Yes, sir.[29]

Foster's first ineffective assistance of counsel claim fails the first prong of the *Strickland* test because he has failed to prove or point to any deficient performance by his counsel. Since Foster's claim is not sufficient to meet the first prong of *Strickland*, his first ineffective assistance of counsel claim fails.

## B.

Foster's second ineffective assistance of counsel claim, and his fourth ground for relief, asserts that his counsel "failed to investigate" and "failed to argue what made defendant['s] charge federal."[30]   "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [proceeding]." *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) (quoting *United*

---

[29] R. Doc. No. 144, at 23, 31.
[30] R. Doc. No. 154, at 9.

*States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). "Bare allegations do not suffice." *Id.*

Foster does not provide any evidence that his counsel did not investigate the facts of Foster's case or that there was insufficient evidence to prove the federal charges filed against him.

The Court specifically asked Foster's attorney at rearraignment if he was able to properly investigate Foster's case, and the Court then asked Foster whether he believed his counsel adequately investigated his case:

> **THE COURT**: Counsel, have you explained the charges to your client?
>
> **MR. ARENA**: I have.
>
> **THE COURT**: Are you satisfied that he knows what he is charged with?
>
> **MR. ARENA**: I am, Your Honor.
>
> **THE COURT**: Have you had the full opportunity to investigate the facts, the laws applicable to the case, as well as any possible defenses [Foster] may have, and to advise and counsel with him?
>
> **MR. ARENA**: I have, Your Honor.
>
> . . .
>
> **THE COURT**: Have you heard and understood the questions I just directed to your attorney and his answers?
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Do you have any questions or comments with respect to those questions or his answers or any other statements made by Mr. Arena?

**THE DEFENDANT**: No, sir.

**THE COURT**: In connection with the defense of your case, did your counsel fail to investigate or follow up on anything that you requested that he investigate or follow up on, which would include, but is not [] limited to, the interviewing of witnesses and/or the locating and review of documents?

**THE DEFENDANT**: Repeat that one more time.

**THE COURT**: Sure. In connection with the defense of your case, did your counsel fail to investigate or follow up on anything that you requested that he investigate or follow up on, which would include, but is not limited to, the interviewing of witnesses and/or the locating and review of documents?

**THE DEFENDANT**: No, sir.[31]

With respect to Foster's argument, liberally construed, that there was insufficient evidence to support a federal crime, the government presented a factual basis to the Court. Foster acknowledged that he read the factual basis and that he did the acts described therein:

**MR. JONES**: Mr. Foster, you heard me read the factual basis in to the record?

**THE DEFENDANT**: Yes, sir.

**MR. JONES**: And you had an opportunity to read and review the factual basis with your attorney, Mr. Arena?

**THE DEFENDANT**: Yes, sir.

**MR. JONES**: Is everything that I read into the record, and everything that is listed in this document, this factual basis, true and correct to your knowledge?

---

[31] R. Doc. No. 144, at 36–38.

**THE DEFENDANT**: Yes, sir.

**MR. JONES**: All the information is true?

**THE DEFENDANT**: Yes, sir.

**MR. JONES**: And you've had an opportunity to review it with your attorney?

**THE DEFENDANT**: Yes, sir.

**MR. JONES**: And you have initialed all four pages of this factual basis?

**THE DEFENDANT**: Yes, sir.

**MR. JONES**: And the initials on all four pages, are these your initials?

**THE DEFENDANT**: Correct.

**MR. JONES**: And on the fourth and final page of the factual basis, is that your signature on the line that says, "Keith Foster, Defendant"?

**THE DEFENDANT**: Yes, sir.

**MR. JONES**: Mr. Arena, have you reviewed the factual basis with your client?

**MR. ARENA**: Yes, we did.

**MR. JONES**: Did you initial all four pages?

**MR. ARENA**: Yes, those are my initials.

**MR. JONES**: Is this your signature on the fourth and final page of the factual basis?

**MR. ARENA**: Yes, it is.

. . .

**THE COURT**: Have you heard the evidence and facts that detail the charges against you?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Have you read the factual basis?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Do you understand the government's evidence?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Are the U.S. attorney's statements correct?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Do you agree that is what you did?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Let me ask you one last time: Do you fully understand the charges against you?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Do you fully understand the consequences of your guilty plea?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Are you pleading guilty because you are, in fact, guilty of the crimes charged?

**THE DEFENDANT**: Yes, sir.[32]

---

[32] R. Doc. No. 144, 43–46.

The factual basis supported the federal charges.

Foster's claim fails because he has not demonstrated deficient performance by his counsel. Foster failed to meet the first prong of *Strickland*.

Although Foster's claim fails the first prong of the *Strickland* test, the Court notes that Foster has also failed to meet the second prong of *Strickland*, that counsel's deficient performance caused him prejudice. Foster has not provided any facts demonstrating that he would have chosen to go to trial rather than plead guilty and that he would have obtained a more favorable result at trial.

The Court specifically questioned Foster and warned him that he was waiving his right to a trial by entering a plea of guilty.

> **THE COURT**: Do you understand if I accept your guilty plea, you will not be entitled to a trial and the government would not be required to prove you guilty?
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Do you understand that?
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Do you understand if you plead guilty, and I accept your guilty plea, you would be waiving and giving up your right to trial and all the other rights I've just explained to you?
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Do you fully understand if I accept your guilty plea, there will be no trial and I'll simply enter a judgment of guilty and sentence you on the basis of your guilty plea?
>
> **THE DEFENDANT**: Yes, sir.

**THE COURT**: Are you willing to waive and give up your right to trial by a jury or judge?

**THE DEFENDANT**: (No response.)

**THE COURT**: Are you willing to waive and give up your right to trial by a jury or judge?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: To put it another way, are you pleading guilty because you did the acts charged in Count 1, Count 4, and Count 5 of the indictment?

**THE DEFENDANT**: Yes, sir.[33]

## CONCLUSION

For the foregoing reasons, Foster's motion to vacate, set aside, or correct his sentence is **DENIED** and his 28 U.S.C. § 2255 motion is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, November 8, 2018.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[33] R. Doc. No. 144, at 19–20.